IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VIRGIL HALL,<br><br>                    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>                    Respondent. | MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTION UNDER 28 U.S.C § 2255<br><br>Civil Case No. 2:14-CV-364 TS<br><br>Criminal Case No. 2:10-CR-1109 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. The Court has considered the pleadings, the record, and the evidence presented, and, for the reasons discussed more fully below, will deny Petitioner's § 2255 Motion.

## I. BACKGROUND

On December 15, 2010, Petitioner was charged in a one-count Indictment alleging possession with intent to distribute 500 grams or more of cocaine. Petitioner's initial appearance hearing was held on December 20, 2010, and Petitioner subsequently appeared before the Court for a detention hearing on December 21, 2010.

Petitioner filed a Motion to Suppress on February 14, 2011, and the Court held an evidentiary hearing on the Motion on April 6, 2011. Shortly thereafter, on April 8, 2011, Petitioner withdrew his Motion to Suppress. At a status conference on April 19, 2011, the Court granted Petitioner's request to withdraw the Motion to Suppress, with prejudice. The Court was also informed that Petitioner was refusing to speak with his defense attorney, and was seeking

new counsel and a speedy trial.  The Court found that Petitioner's attorney had done nothing

wrong but released him from the case and appointed new defense counsel.

Petitioner proceeded to trial, and on June 9, 2011, a jury found Petitioner guilty of

possession with intent to distribute 500 grams or more of cocaine.  Petitioner was sentenced on

November 8, 2011, to 120 months in custody and 60 months of supervised released.

Petitioner timely filed a Notice of Appeal on November 14, 2011, and the Tenth Circuit

appointed appellate counsel.  On appeal, Petitioner argued only that this Court erred by admitting

inadmissible 404(b) evidence at trial.  The Tenth Circuit disagreed and entered judgment

affirming this Court's decision on January 25, 2013.

Petitioner also filed a petition for a writ of mandamus directing the district court's clerk

to provide Petitioner with original, true, and correct copies of his indictment, complaint, and

judgment.  The Tenth Circuit dismissed the mandamus petition as frivolous on September 4,

2013.

On May 12, 2014, Petitioner timely filed the instant § 2255 Motion.

## II.  DISCUSSION

28 U.S.C. § 2255(a) provides,

A prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed
in violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

"Section 2255 is available to correct errors of constitutional or jurisdictional dimension, or fundamental errors which result in a complete miscarriage of justice."[1]  When bringing a § 2255 motion, "the petitioner has the burden of proving that his sentence is invalid."[2]

"Section 2255 petitions are not available to test the legality of matters which should have been raised on direct appeal."[3]  If an issue is not raised on direct appeal, the defendant "is barred from raising the issue in a § 2255 motion proceeding, unless he establishes other cause excusing the procedural default and prejudice resulting [from] the error or a fundamental miscarriage of justice [if] the claim is not considered."[4]  "A defendant may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment."[5]

Petitioner's § 2255 Motion asserts several grounds for relief under the Fifth and Sixth Amendments, including seven ineffective-assistance-of-counsel claims concerning trial and appellate counsel, and claims asserting violations of his rights to self-representation, to an open court and public trial, and challenging the standing and subject-matter jurisdiction in this case. In this matter, Petitioner did pursue a direct appeal, but he only pursued a single claim that does not encompass any of the claims in the instant Motion.  As a result, Petitioner's claims raised in

---

[1] *Brown v. United States*, 34 F.3d 990, 991 (10th Cir. 1994) (internal citations omitted).

[2] *United States v. Edmonson*, 922 F. Supp. 505, 510 (D. Kan. 1996) (citation and internal quotation marks omitted).

[3] *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994); *see also United States v. Khan*, 835 F.2d 749, 753 (10th Cir. 1987).

[4] *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996); *see also United States v. Frady*, 456 U.S. 152, 167–68 (1982).

[5] *United States v. Cook*, 45 F.3d 388, 392 (10th Cir. 1995) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), *abrogated on other grounds*, *Neill v. Gibson*, 278 F.3d 1044, 1057 n.5 (10th Cir. 2001).

the instant Motion are procedurally barred unless he can show either cause and prejudice or a fundamental miscarriage of justice. Petitioner seeks to establish cause for his failure to bring his claims on appeal by demonstrating that he received ineffective assistance of counsel at trial, and also seeks to assert claims for ineffective assistance of counsel concerning appellate counsel. Petitioner's claims asserting rights to self-representation and open court and fair trial are procedurally barred. But to the extent that Petitioner seeks to assert these claims based on ineffective assistance of counsel to raise the claims on direct appeal, the Court's inquiry turns on whether Petitioner's counsel was in fact ineffective.

A.      INEFFECTIVE ASSISTANCE OF COUNSEL

The Supreme Court has set forth a two-pronged test to guide the Court in making a determination of ineffective assistance of counsel. "To determine ineffectiveness of counsel, [Petitioner] must generally show that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficient performance was prejudicial."[6] A court is to review Petitioner's ineffective-assistance-of-counsel claim from the perspective of his counsel at the time he or she rendered the legal services, not in hindsight.[7] In addition, in evaluating counsel's performance, the focus is not on what is prudent or appropriate, but only what is constitutionally compelled.[8] Finally, there is "a strong presumption that counsel provided effective assistance, and a section 2255 defendant has the burden of proof to overcome that presumption."[9]

---

[6] *United States v. Lopez*, 100 F.3d 113, 117 (10th Cir. 1996) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 690 (1984)).

[7] *Hickman v. Spears*, 160 F.3d 1269, 1273 (10th Cir. 1998).

[8] *United States v. Cronic*, 466 U.S. 648, 665 n.38 (1984).

[9] *United States v. Kennedy*, 225 F.3d 1187, 1197 (10th Cir. 2002).

Petitioner asserts ineffective-assistance-of-counsel claims concerning both his trial counsel and appellate counsel.

1.   *Ineffective Assistance of Trial Counsel*

Petitioner argues that his trial counsel was ineffective because Petitioner's trial counsel failed to (1) object to a sentencing enhancement under 21 U.S.C. § 851, (2) move for dismissal based on the Speedy Trial Act, (3) investigate the legitimacy of Petitioner's Indictment, and (4) build a defense on Petitioner's behalf.  The Court will evaluate each in turn.

a.   Sentencing Enhancement

Petitioner argues that his trial counsel was ineffective for failing to object to a sentencing enhancement applied pursuant to 21 U.S.C. § 851.

Petitioner was convicted of possession of cocaine with intent to distribute under 21 U.S.C. § 841(a)(1).  The penalty for such a conviction is defined in 21 U.S.C. § 841(b)(1)(B), as "[not] less than 5 years and not more than 40 years" unless the crime was committed "after a prior conviction for a felony drug offense has become final, [then] such person shall be sentenced to a term of imprisonment which may not be less than 10 years."  21 U.S.C. § 802(44) defines felony drug offenses as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."  To seek an enhancement based on a prior felony drug conviction, the government must comply with the procedural requirements detailed in 21 U.S.C. § 851.  The government did so in this case by filing an Information notifying Petitioner of the possibility that the government

might seek a sentencing enhancement based on one or more of Petitioner's five prior drug-related felony convictions.

Petitioner argues that trial counsel was ineffective for failing to object to the potential enhancement and failing to seek a hearing on the government's § 851 notice on the grounds that Congress's purpose in enacting the enhancement was to target serious drug trafficking crimes, not the type of convictions in Petitioner's criminal history.

The Court can find no ineffective assistance concerning the sentencing enhancement. Despite Petitioner's assertion that Congress intended the sentencing enhancement to apply only to recidivist drug traffickers, Congress defined the convictions that warrant enhancement much more broadly, as discussed above.  Petitioner urges the Court to follow the reasoning in *United States v. Kupa*,[10] where the United States District Court for the Eastern District of New York discussed the negative effects of prosecutors relying too frequently on the threat of a sentencing enhancement to prompt plea agreements, or the same reasoning found in *United States v. Young*,[11] from the Northern District of Iowa.  The Court is not persuaded that the sentencing enhancement was improperly used in Petitioner's case and therefore concludes that Petitioner's trial counsel's failure to object to the enhancement was not objectively unreasonable.  Moreover, Petitioner has not demonstrated any prejudice because even if Petitioner's trial counsel had raised this argument, the Court is not persuaded that Petitioner's sentence would have changed.

---

[10] 976 F. Supp. 2d 417 (E.D.N.Y. 2013).

[11] 960 F. Supp. 2d 881 (N.D. Iowa 2013).

b.      Speedy Trial Act

Petitioner argues that his trial counsel was ineffective for failing to move for dismissal based on the Speedy Trial Act.

The Speedy Trial Act, 18 U.S.C. § 3161, requires "that a criminal trial commence within seventy days of the filing of the indictment or information or the defendant's appearance, whichever occurs last."[12]  However, certain periods of delay are excluded from computation under the Speedy Trial Act.  Specifically, periods of "delay resulting from any proceeding, including any examinations, to determine the mental competency or physical capacity of the defendant" and "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" are excluded from computation under the Act.[13]  "If a defendant is not brought to trial within the time limit required by section 3161(c) as extended by 3161(h), the information or indictment shall be dismissed on motion of the defendant."[14]

Petitioner's Indictment was filed on December 15, 2010, and his Initial Appearance occurred on December 20, 2010, so Petitioner's Speedy Trial Act period began to run on December 20, 2010.  Petitioner then filed a Motion to Suppress on February 14, 2011, which tolled the Speedy Trial Act period, pursuant to 18 U.S.C. § 3161(h)(1)(D)—at that point, 56 days

---

[12] *United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009); *see also* 18 U.S.C. § 3161(c)(1) ("In any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs . . . .").

[13] 18 U.S.C. § 3161(h)(1)(A), (D).

[14] *Id.* § 3161(a)(2).

of Speedy Trial Act time had run.  At a status conference held on April 18, 2011, the Court granted Petitioner's request to withdraw the Motion to Suppress, which ended the tolling of the Speedy Trial Act period.  But, at that same status conference, the Court was notified that Petitioner had ceased speaking with his attorney, sought appointment of a new attorney, and requested a speedy trial.  The Court found that Petitioner's trial counsel had not performed deficiently, but released him from the case, appointed new counsel, and reset the trial date for 51 days out, on June 8, 2011.  Petitioner argues that the Speedy Trial Act period ended on May 12, 2011, and that his trial counsel was ineffective for failing to move for dismissal before taking Petitioner's case to trial in June.  The Court is unable to conclude that Petitioner's trial counsel was ineffective because it is clear from the record that the continuance granted at the status conference was based on the Court's ends-of-justice findings.  As such, there was no basis for Petitioner's trial counsel to move for dismissal based on the Speedy Trial Act.

Delays resulting from a continuance are excluded from the Speedy Trial Act calculation if the Court finds that "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."[15]  Among the factors that can support an ends-of-justice continuance are "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice,"[16] or "[w]hether the failure to grant such a continuance . . . would unreasonably deny the defendant . . . continuity of counsel, or would deny counsel for the defendant . . . the

---

[15] *Id.* § 3161(h)(7)(A).

[16] *Id.* § 3161(h)(7)(B)(i).

reasonable time necessary for effective preparation, taking into account the exercise of due diligence."[17]

To exclude time from the Speedy Trial Act period resulting from an ends-of-justice continuation, courts must "set[] forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."[18]  Although these findings "'may be entered on the record after the fact, they may not be made after the fact.'"[19]  "Instead, 'the balancing must occur contemporaneously with the granting of the continuance because Congress intended that the decision to grant an ends-of-justice continuance to be prospective, not retroactive . . . .'"[20]  "[I]t must be 'clear from the record that the trial court struck the proper balance when it granted the continuance.'"[21]  "Courts need not necessarily *expressly* conduct a balancing or use particular language, so long as the court gives 'some indication, contemporaneous with the grant of the continuance, to which the later findings referred.'"[22]

As explained in the April 18 status conference's minute entry,[23] Petitioner had ceased speaking with defense counsel even though the Court found no fault with counsel's

---

[17] *Id.* § 3161(h)(7)(B)(iv).

[18] *Id.* § 3161(h)(7)(A).

[19] *United States v. Hill*, 197 F.3d 436, 441 (10th Cir. 1999) (quoting *United States v. Doran*, 882 F.2d 1511, 1516 (10th Cir. 1989)).

[20] *Id.* (quoting *Doran*, 882 F.2d at 1516).

[21] *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996) (quoting *Doran*, 882 F.2d at 1516).

[22] *Spring*, 80 F.3d at 1456 (quoting *Doran*, 882 F.2d at 1517).

[23] Minute Entry, Docket No. 36, *United States v. Hall*, No. 2:10-CR-1109-TS-1 (D. Utah Apr. 11, 2011).

representation.  Defendant asked the Court to appoint a new attorney, and consequently

Petitioner's initial counsel was released from the case and new counsel was appointed.  The

fourth ends-of-justice factor explains that Speedy Trial Act time may be excluded when the

failure to grant a continuance would deny defense counsel the time needed for effective

preparation.  The Court concludes that the trial date was continued beyond the Speedy Trial

Act's seventy-day period based on the Court's balancing of the ends-of-justice factors against the

best interests of the public and Petitioner in a speedy trial.  As such, there was no Speedy Trial

Act violation upon which Petitioner's counsel could seek dismissal.

Moreover, Petitioner has not demonstrated how a motion to dismiss could have

succeeded, had one been raised.  Courts evaluate a Sixth Amendment speedy-trial challenge

using the following four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the

defendant's assertion of his right; and (4) prejudice to the defendant."[24]  "[N]one of the four

factors [are] either a necessary or sufficient condition to the finding of a deprivation of the right

of speedy trial.  Rather, they are related factors and must be considered together with such other

circumstances as may be relevant."[25]  However, "'[t]he first factor, length of delay, functions as

a triggering mechanism' and 'the remaining factors are examined only if the delay is long

enough to be presumptively prejudicial.'"[26]  "Delays approaching one year generally satisfy the

---

[24] *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006).

[25] *Barker v. Wingo*, 407 U.S. 514, 533 (1972).

[26] *Toombs*, 574 F.3d at 1274 (quoting *Yehling*, 456 F.3d at 1243).

requirement of presumptive prejudice."[27]  "The length of delay is measured from the time at which the speedy trial right attaches: the earlier of either arrest or indictment."[28]

Petitioner was indicted on December 15, 2010, arrested on December 20, 2010, and his trial began on June 8, 2011.  For Sixth Amendment speedy-trial purposes, this is a period of 175 days.  The length of delay falls far short of the roughly one-year threshold that has been found to satisfy the first factor.  But even if the Court were to find the length of delay sufficient to satisfy the triggering function of the first factor, the other factors do not weigh in Petitioner's favor.  First, the delay was not significant.  Although Defendant raised the speedy-trial issue at the April 18th status conference, the reason for delay in this case was largely Petitioner's Motion to Suppress—which was eventually withdrawn—and Petitioner's need for newly appointed counsel late in the process after Petitioner stopped communicating with his initially appointed counsel.  Petitioner argues that the delay provided the government with a tactical advantage, but does not explain how the government benefited from the delay.  Instead, the delays were prompted by advantages sought by Petitioner—attempting to suppress certain evidence and to seek new counsel.  The Court is not persuaded that Petitioner could have raised a credible Sixth Amendment speedy-trial challenge based on delays that were due to his own actions, or that Petitioner's trial counsel was ineffective for failing to raise this issue.

---

[27] *United States v. Batie*, 433 F.3d 1287, 1290 (10th Cir. 2009) (citing *United States v. Doggett*, 505 U.S. 647, 652 n.1 (1992); *Jackson v. Ray*, 390 F.3d 1254, 1261 (10th Cir. 2004)); *accord United States v. Rocha*, No. 2:04-CR-60-TC, 2006 WL 3171170, at *1 (D. Utah Nov. 1, 2006) (collecting cases).

[28] *Batie*, 433 F.3d at 1290 (citing *United States v. Marion*, 404 U.S. 307, 320–21 (1971); *Jackson*, 390 F.3d at 1261).

In summary, Petitioner has failed to show that violations of the Speedy Trial Act or the right to a speedy trial under the Sixth Amendment occurred, much less show that trial counsel was ineffective for seeking dismissal on those grounds.

c.      Legitimacy of Indictment

Petitioner argues that his trial counsel was ineffective for failing to investigate the legitimacy of the Indictment.  Petitioner asserts that the Indictment is not lawful because it is merely a draft and not a final Indictment, and because it does not contain the requisite signatures by the U.S. Attorney or the foreman of the grand jury.

Having reviewed the Indictment filed on the public docket in this matter,[29] the Court finds that the Indictment is a final, executed copy, not a draft.  Second, Assistant U.S. Attorney Drew Yeates signed the Indictment on behalf of Assistant U.S. Attorney Paul Kohler.  Third, the foreperson's signature is represented by the notation "/s/" on the public docket copy of the Indictment.  The U.S. Supreme Court has explained, "[T]he foreman's duty to sign the Indictment is a formality, for the absence of the foreman's signature is a mere technical irregularity that is not necessarily fatal to the Indictment."[30]  Moreover, the Tenth Circuit has found that such a notation representing the foreman of the grand jury is proper on the public copy of the Indictment.[31]

Petitioner argues that the Indictment does not contain any indication that it was delivered to a judge in open court. DUCrimR 6-1 explains, "[A]ll grand jury indictments must be returned

---

[29] Indictment, Docket No. 4, *United States v. Hall*, 2:10-CR-1109-TS-1 (D. Utah Dec. 15, 2010).

[30] *Hobby v. United States*, 468 U.S. 339, 345 (1984).

[31] *See, e.g.*, *United States v. Curls*, 219 F. App'x 746, 751 (10th Cir. 2007).

to a United States district or magistrate judge in open court.  The indictments will be filed immediately with the clerk of the court, and the defendants will be scheduled to appear before the magistrate judge for arraignment."  The requirements of Rule 6-1 were satisfied on December 20, 2010, when Petitioner appeared before Magistrate Judge Braithwaite for his Initial Appearance.  The Court's minute entry indicates that the Indictment was presented to the judge in open court.

Based on the foregoing, the Court finds that Petitioner's trial counsel was not ineffective for failing to challenge the validity of the Indictment.

c.       Building a Defense

Petitioner argues that his trial counsel was ineffective for failing to build a defense on Petitioner's behalf.  Petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"[32]  The Supreme Court has stated,

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.[33]

---

[32] *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

[33] *Id.* at 690–91.

The Tenth Circuit has held that "[s]trategic or tactical decisions on the part of counsel are presumed correct, unless they were completely unreasonable, not merely wrong."[34]

In support of his position, Petitioner identifies five examples of inadequacies in defense counsel's investigation and legal strategy.

First, Petitioner argues that defense counsel was ineffective for failing to present evidence at trial explaining that Petitioner's luggage was empty and that his codefendant's luggage contained dryer sheets, money, and narcotics wrapped with zip lock bags and rubber bands.  Petitioner also asserts that defense counsel was ineffective for failing to present to the jury surveillance footage from the store where his codefendant purchased some of the materials used to package the narcotics.

The Court finds that Petitioner has failed to demonstrate that defense counsel's performance was objectively unreasonable.  Counsel's decision not to highlight these details of the Petitioner's and his codefendant's conduct fell "within the wide range of reasonable professional assistance."[35]  Moreover, even if the Court were to find that defense counsel performed deficiently, Petitioner has not met his burden of showing he was prejudiced by defense counsel's failure to pursue this strategy.  Petitioner argues that, had defense counsel presented this evidence to the jury, "it would have been a strong possibility the government['s] key witness could have been impeached from the stand."[36]  It is unclear how the codefendant's testimony would have been impeached by these facts because the codefendant admitted his

---

[34] *Moore v. Marr*, 254 F.3d 1235, 1239 (10th Cir. 2001) (citations and internal quotation marks omitted).

[35] *Strickland*, 486 U.S. at 689.

[36] Docket No. 1-1, at 16.

involvement in the drug trafficking incident that gave rise to this case.  Petitioner has not demonstrated how these details would have undermined the codefendant's testimony so severely as to constitute prejudice to not present them to the jury.

Second, Petitioner argues that defense counsel was ineffective for failing to investigate a potential inconsistency in his codefendant's testimony.  Specifically, Petitioner argues that his codefendant testified incorrectly as to the timing of the first meeting between Petitioner and his codefendant.  Petitioner argues that defense counsel was deficient for failing to raise these issues in an attempt to impeach the codefendant's testimony.

Petitioner has not demonstrated that defense counsel's performance was deficient for failing to pursue this line of inquiry.  Furthermore, Petitioner has not shown how this potential inconsistency is material to the crime charged, much less that defense counsel's failure to pursue the inconsistency prejudiced Petitioner.  As such, the Court finds that Petitioner has failed to meet his burden on this ground.

Third, Petitioner argues that defense counsel was ineffective for failing to investigate the codefendant's testimony about sending $300 to Petitioner's wife.  Petitioner presented the Court with an affidavit wherein Petitioner's wife attests to not receiving $300 from the codefendant, and argues that defense counsel was deficient for failing to impeach the codefendant's testimony on this point.

Again, Petitioner has not demonstrated that defense counsel's performance was deficient. Defense counsel's decision not to present a competing witness concerning a minor detail in the case falls squarely within the strategic discretion to which courts defer.  And even if the Court were to assume that defense counsel's performance was deficient, Petitioner has failed to explain

15

how pursuing this detail could have impeached the codefendant to such an extent that defense counsel's failure to do so prejudiced Petitioner.

Fourth, Petitioner argues that defense counsel was ineffective for failing to present an investigator that Petitioner hired. Petitioner asserts that the investigator could have impeached the codefendant's testimony by pointing out inconsistencies and discussing codefendant's criminal history.

For many of the reasons discussed above, Petitioner failed to demonstrate that defense counsel's performance was deficient. Petitioner does not contend that the investigator would have testified about facts that would bolster an alibi asserted by Petitioner. Instead, Petitioner explains that the investigator's testimony would have impeached the codefendant's testimony by introducing a prior drug-related incident involving Petitioner's codefendant. And in any event, even if the Court were to assume that defense counsel's performance was deficient, Petitioner has not demonstrated prejudice. Petitioner has not demonstrated that the investigator's testimony would not have changed the outcome of the trial.

Fifth, Petitioner argues that defense counsel was ineffective for failing to challenge the chain of custody for the narcotics presented in court, and that had counsel done so, the proceedings would have stopped and the outcome of the trial would have been different.

Petitioner failed to show that defense counsel's performance was deficient. Counsel's decision to focus on issues other than challenging the chain of custody falls well within the range of latitude afforded counsel on strategic choices. Moreover, in light of the two witnesses who testified as to the existence of the narcotics, Petitioner has failed to demonstrate that this strategic choice prejudiced Petitioner.

2.    *Ineffective Assistance of Appellate Counsel*

Petitioner argues the following three bases for ineffective assistance of appellate counsel: (1) failure to investigate a purportedly erroneous judgment issued by the trial court; (2) failure to file a supplemental brief, contrary to Petitioner's instructions; and (3) failure to investigate Petitioner's claims of prosecutorial vindictiveness.

"[I]t is difficult to establish a claim of ineffective assistance of appellate counsel based on a failure to raise a particular issue on appeal."[37]

> "The Sixth Amendment does not require an attorney to raise every nonfrivolous issue on appeal. Consequently, appellate counsel engage in a process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail. The weeding out of weak claims to be raised on appeal is the hallmark of effective advocacy, because every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. Consequently, appellate counsel will frequently remain above an objective standard of competence and have caused her client no prejudice for the same reason—because she declined to raise a weak issue.[38]

When the basis of a claim for ineffective assistance of counsel is the failure by appellate counsel to raise an issue on appeal, "we must look to the merits of the omitted issue."[39] Petitioner meets his burden if he can show "a reasonable probability that the omitted claim would have resulted in a reversal on appeal."[40] "If the omitted issue is without merit, then counsel's failure to raise it is not prejudicial, and thus is not ineffective assistance."[41]

---

[37] *United States v. Parada*, 555 F. App'x 763, 766 (10th Cir. 2014) (citing *Upchurch v. Bruce*, 333 F.3d 1158, 1163 (10th Cir. 2003)).

[38] *Cook*, 45 F.3d at 394–95 (citations and internal quotation marks omitted), *abrogated on other grounds*, *Neill*, 278 F.3d at 1057 n.5.

[39] *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006).

[40] *Neill*, 278 F.3d at 1057 n.5.

[41] *Orange*, 447 F.3d at 797.

a.      Errors on the Judgment

Petitioner argues that his appellate counsel was ineffective for failing to investigate and challenge the judgment entered by the Clerk of Court.  Petitioner argues that his incarceration is improper because the judgment initially entered on the docket incorrectly indicated that Petitioner had pleaded guilty, because it does not have a court seal or the Clerk of Court's signature, and because the copy provided to Petitioner by the Clerk of Court contains a stamp certifying that the document provided is a true and correct copy of the document that is on the docket.

Petitioner's appellate counsel moved to correct the judgment to reflect the jury's finding of guilt, and to remove the incorrect notation that Petitioner had pleaded guilty.[42]  Shortly thereafter, the Court amended the judgment to correct the error.  Consequently, contrary to Petitioner's assertion, his appellate counsel challenged, and succeeded in correcting, the judgment entered against Petitioner.  It appears that appellate counsel pursued resolution of this issue in the appropriate manner.  Moreover, even if the Court were to examine the prejudice involved on this ground, Petitioner has failed to articulate any prejudice suffered.

In support of Petitioner's argument concerning seals and stamps on the judgment, Petitioner cites the Federal Rules of Civil Procedure, and a bankruptcy case applying those rules. But the Federal Rules of Criminal Procedure govern Petitioner's criminal case, and they do not support Petitioner's argument.  Rule 32 states, "In the judgment of conviction, the court must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence. . . . The

---

[42] *See* Motion to Amend/Correct Judgment, Docket No. 148, *United States v. Hall*, 2:10-CR-1109-TS-1 (D. Utah Apr. 12, 2012).

judge must sign the judgment, and the clerk must enter it."[43]  Having reviewed the amended

judgment entered against Petitioner, the Court finds no deficiencies.  Furthermore, even if the

Court were to find that the documentation failed to comply with the Rules of Criminal

Procedure, the Petitioner has failed to demonstrate how the deficiency would entitle him to relief.

Finally, Petitioner argues that the Clerk of Court "deceitfully stamped the annexed on the

certified copy"[44] of the Indictment that Petitioner requested from the Court.  Petitioner appears to

be arguing that the Clerk of Court has attempted to place a fraudulent stamp on the copies

provided to Petitioner.  Petitioner's argument is meritless. The stamp to which Petitioner objects

states, "I hereby certify that the annexed is a true and correct copy of a document or an electronic

docket entry on file at the United States District Court for the District of Utah."[45]  The Court has

reviewed the Indictment that appears on the docket and finds that the copy provided to Petitioner

is in fact a true and accurate copy.  Moreover, Federal Rule of Criminal Procedure 7(c)(1)

explains the requirements for the contents and form of an Indictment, and it does not require a

stamp of any kind.[46]  To the extent that Petitioner argues the stamp serves some other fraudulent

purpose, the Court finds no basis for such an argument in the rules of criminal procedure.  But

even if the Court were to assume that the copy of the Indictment provided by the Clerk of Court

contained an improper stamp, Petitioner has not demonstrated that he suffered prejudice as a

result.

---

[43] Fed. R. Crim. P. 33(k)(1).

[44] Docket No. 1-1, at 18.

[45] Docket No. 1-2, at 6.

[46] *See* Fed. R. Crim. P. 7(c)(1).

b.      Supplemental Brief

Petitioner argues that his appellate counsel was ineffective for failing to file a supplemental brief raising the issues argued in the instant § 2255 appeal.  Having considered Petitioner's arguments, the Court notes that Petitioner's appellate counsel competently represented Petitioner's best interests by winnowing weak issues, and choosing not to raise them. For the same reasons discussed throughout this Order, the Court finds that Petitioner has failed to demonstrate a reasonable probability that the claims raised in the instant Motion would have resulted in a reversal on direct appeal.  Moreover, claims of ineffective assistance of counsel are, generally speaking, not appropriate issues for direct appeal, but are better left to post-conviction proceedings, such as this one.

c.      Prosecutorial Vindictiveness

Petitioner argues that his appellate counsel was ineffective for failing to investigate a possible prosecutorial-vindictiveness claim.  Petitioner argues that the prosecutor retaliated after Petitioner exercised his right to a speedy trial by seeking an unreasonable sentencing enhancement under 21 U.S.C. § 851, prosecuting Petitioner with an unlawful Indictment, presenting false testimony and fabricating evidence at trial, and providing his opinion to the jury during trial and closing arguments.

As discussed above, Petitioner's claims concerning the sentencing enhancement and the lawfulness of the Indictment are without merit.  Petitioner fails to identify the testimony he claims was false, or the evidence he claims was fabricated.  To the extent that this challenge relates to the purported inconsistencies in Petitioner's codefendant's testimony, the argument fails for the reasons discussed above.  To the extent that this challenge relates to other evidence

presented at trial, Petitioner failed to identify the evidence or to provide support for his assertion

that the evidence was false or fabricated.  Finally, Petitioner argues that the prosecutor "stat[ed]

his opinion in trial and closing argument.  Stating allegations about the person he explain [sic] to

the jury we will call Al.  Telling the jury what Al seen thought and did.  When the prosecutor

never interviewed this person he say is Al."[47]  Petitioner's codefendant testified at length about a

man named Al,[48] and the government's comments about Al fairly summarize the testimony or

otherwise constitute reasonable inferences from the evidence.

     Based on the foregoing, the Court finds that each of Petitioner's grounds for a

prosecutorial-vindictiveness claim is frivolous, and that Petitioner's appellate counsel's

performance was not deficient for failing to pursue such a claim.

C.     RIGHT TO SELF-REPRESENTATION

     Petitioner argues that the Court improperly denied his request to represent himself on

appeal.  Petitioner "has no constitutional right to represent himself on direct appeal."[49]  Rather,

courts are given discretion, "keeping 'the best interests of both the prisoner and the government

in mind,'" to decide whether to permit felony convicts to represent themselves on appeal.[50]

     On December 1, 2011, Petitioner stated, in a letter to the Court,

> I feel I have been mislead, misrepresented, not given the right to all of my
> paperwork and discovery.  As of now Mr. Winward and Mr. Cramer are fired.
> Seeming the Judge is ignoring the facts of all the issues I have repeatedly

---

[47] Docket No. 1-1, at 19.

[48] Transcript of Jury Trial, June 9, 2011, Docket No. 141, at 36–140, *United States v. Hall*, 2:10-CR-1109-TS-1 (D. Utah Jan. 6, 2012).

[49] *United States v. Hoodenpyle*, 461 F. App'x 675, 683 (10th Cir. 2012) (citing *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 163 (2000)).

[50] *Martinez*, 528 U.S. at 162.

informed him of I will represent myself.  I will have nothing to do with St. George attorneys.[51]

Petitioner has not demonstrated that his appellate counsel's performance was deficient for failing to raise this issue.  Given the discretion afforded courts in deciding whether to permit prisoners to represent themselves on appeal, appellate counsel was well within the bounds of competence to choose not to raise the issue.  Even if the Court were to assume that appellate counsel should have raised the issue, however, Petitioner has not demonstrated that he was prejudiced by counsel's failure to do so.

D.     RIGHT TO OPEN COURT AND PUBLIC TRIAL

Finally, Petitioner reiterates the arguments discussed above relating to the legitimacy of the Indictment.  For the reasons discussed above, the Court finds that Petitioner has failed to demonstrate that Petitioner's counsel was ineffective for failing to raise these arguments.

E.     SUBJECT-MATTER JURISDICTION, STANDING

In his Reply Memorandum, Petitioner argues that this Court has no subject-matter jurisdiction or standing in this matter.  Petitioner appears to argue that jurisdiction does not exist as a result of the arguments described above concerning the legitimacy of the Indictment.  To the extent that Petitioner's jurisdictional argument depends on the arguments about the Indictment's legitimacy, the Court rejects them for the reasons described above.

To the extent Petitioner argues more broadly that the Court lacks jurisdiction, his argument still fails.  Petitioner was charged with in a one-count Indictment for possession with intent to distribute 500 grams or more of cocaine, pursuant to 21 U.S.C. § 841(a)(1).  "'In every

---

[51] Document Lodged, Docket No. 135, at 1, *United States v. Hall*, 2:10-CR-1109-TS-1 (D. Utah Dec. 1, 2011).

federal criminal prosecution [subject-matter jurisdiction] comes from 18 U.S.C. § 3231.  That's the beginning and the end of the jurisdictional inquiry.'"[52]  Section 3231 states, "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."[53]  Based on the foregoing, the Court finds that Petitioner's jurisdictional arguments to be without merit.

### III.  CONCLUSION

It is hereby

ORDERED that Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Docket No. 1 in Case No. 2:14-CV-364 TS) is DENIED.  It is further

ORDERED that, pursuant to Rule 8(a) of the Rules Governing § 2255 Cases, an evidentiary hearing is not required.  It is further

ORDERED that, pursuant to Rule 11(a) of the Rules Governing § 2255 Cases, the Court DENIES Petitioner a certificate of appealability.

The Clerk of Court is directed to close Case No. 2:14-CV-364 TS forthwith

DATED this 29th day of December, 2014.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[52] *United States v. Tony*, 637 F.3d 1153, 1158 (10th Cir. 2011) (quoting *United States v. White Horse*, 316 F.3d 769, 772 (8th Cir. 2003) (quotations omitted)) (alterations in original).

[53] 18 U.S.C. § 3231.